FILED
2018 Apr-12 AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CEDRICK FRANKLIN,** | ) |
|     **Plaintiff,** | ) ) |
| vs. | ) ) Civil Action Number |
| **CITY OF ATHENS, et al.,** | ) 5:17-cv-01506-AKK ) |
|     **Defendants.** | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Cedrick Franklin brings this employment discrimination suit pursuant to 42 U.S.C. § 1983 claiming that his employer, the City of Athens (the City), violated 42 U.S.C. § 1981. He also alleges a separate, free-standing violation of the Age Discrimination in Employment Act of 1967 (the ADEA), 29 U.S.C. § 621 *et seq*.[1]

---

[1] While Franklin's complaint contains several allegations arguably related to potential hostile work environment or retaliation claims, Franklin concedes he does not allege a retaliation claim, doc. 24 at 5, and he has largely removed those allegations from his proposed amended complaint. *See* Doc. 21 at 3 n.1. Instead, Count I of Franklin's amended complaint alleges only a § 1981 disparate treatment claim based on the City's decision to discharge him, rehire him, place him on probation, and finally discharge him for a second time. *See* Doc. 17-1 at 8–12. The court notes however, that, to the extent the amended complaint suggests that municipal liability for these actions is appropriate based on either the City's failure to properly train its employees or a longstanding practice or custom of racial discrimination, *id.* at 11–12, those theories are supported by only vague, conclusory allegations insufficient to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. Additionally, the proposed amended complaint has abandoned the requests for punitive damages and, as to the ADEA, for pain and suffering damages in recognition of the settled law governing ADEA and § 1983 claims. *Id.* at 13, 15–16; *See Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1446 (11th Cir. 1985) ("neither punitive damages nor compensatory damages for pain and suffering are recoverable under the ADEA"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)

The City has now moved to dismiss Franklin's § 1983 claim in its entirety, doc. 9, arguing broadly that Franklin has failed to adequately allege that the municipality is liable for purportedly discriminating against him. In response, Franklin sought leave of court to file an amended complaint, doc. 17, which the City opposes on the grounds of futility. Doc. 21. Both motions are now fully briefed, docs. 10; 17; 18; 20; 21; and 24, and ripe for review. Upon careful consideration of the parties' briefs and Franklin's proposed amended complaint, doc. 17-1, the court finds the City's motion is due to be denied and Franklin's motion is due to be granted with certain exceptions delineated herein.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

---

("a municipality is immune from punitive damages under 42 U.S.C. § 1983"). Accordingly, as to these issues, Franklin's proposed amended complaint renders the City's motion **MOOT**.

2

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the plausibility standard does not impose a "probability requirement," the allegations in a plaintiff's complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that the "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one, and making this determination is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Moreover, the court notes that ordinarily a plaintiff is allowed to amend her complaint "once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). Franklin, however, declined to avail himself of this option and instead opted to file "an unnecessary motion to amend, with the proposed amendments attached." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010). In doing so, Franklin "waived [his] right to amend as a matter of course and . . . invited [this court] to review [his] proposed amendments." *Id.* at 870. In conducting this review, the court bears in mind that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Federal Rules of Civil Procedure buttress this conclusion and provide that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). The Eleventh Circuit has explained that an amendment is futile if "'the complaint as amended is still subject to dismissal.'" *Id.* at 1263 (quoting *Burger King Corp. v. Weaver*, 169

F.3d 1310, 1320 (11th Cir. 1999)). Thus, the same standard applies to the City's motion to dismiss and to Franklin's motion to amend. Moreover, because the proposed amended complaint is, in relevant part, substantively identical to Franklin's original pleading, *see* doc. 21 at 2–3, the court's analysis applies equally to both documents.

## II.   FACTS[2]

Franklin is an African-American man over the age of forty who began working as an equipment operator for the City's Public Works Department in 2015. Doc. 17-1 at 3–5. Less than a year later, Franklin's supervisor, Earl Glaze, without explanation, offered Franklin a choice between resignation or discharge despite his unblemished disciplinary record. *Id.* at 5, 7. Franklin declined to resign and informed Glaze that he intended to seek legal advice regarding his treatment. *Id.* at 5–6. Glaze promptly discharged Franklin, but hours thereafter sought to rehire him. *Id.* Franklin accepted this offer and returned to work several weeks later. *Id.* at 6, 9.

During the rehiring process, Glaze asked Franklin to sign a purportedly false report of disciplinary action related to an event that occurred several months prior to Franklin's discharge. *Id.* When Franklin refused to sign the report, Glaze placed him on probation for thirty days pending a permanent decision regarding his

---

[2] The "facts" are taken directly from Franklin's complaint. *See Hunt*, 814 F.3d at 1221.

employment status. *Id.* at 6. At the conclusion of the probationary period, Glaze discharged Franklin for purportedly failing to complete job assignments promptly. *Id.* at 7. Franklin alleges that other similarly situated white employees also failed to promptly complete their assignments without suffering any repercussions from Glaze, and that Glaze brushed off Franklin's complaints of racial bias. *Id.* at 7, 10–11. The City subsequently hired a younger white employee to replace Franklin. *Id.* at 7.

## III. DISCUSSION

To state a plausible claim under § 1983 the complaint must name a defendant capable of being sued. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). The requisite "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Id.* (quoting Fed. R. Civ. P. 17(b)). Franklin's complaint names both the City and its Public Works Department as defendants. Doc. 17-1 at 3. However, as explained by the Alabama Supreme Court, "[g]enerally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." *Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010) (quotation omitted); *see also Dean*, 951 F.2d at 1215 (concluding that under "Alabama law, a county sheriff's department lacks the capacity to be sued"); *Hardin v. City of Troy*

6

*Pub. Works Dep't*, No. 2:10-CV-663-MEF, 2013 WL 5231872, at *7 (M.D. Ala. Sept. 16, 2013) (relying on Alabama law to conclude that a municipality's public works department is "not a separate entity" and lacks the capacity to be sued). Franklin has failed to identify any statutory authority authorizing municipal public works department to sue or be sued, and the court therefore concludes that the Public Works Department lacks the requisite legal capacity to be subject to a § 1983 claim. Accordingly, the Department is due to be dismissed from this action.

### A. Franklin has Plausibly Alleged a § 1983 Claim Against the City of Athens[3]

Franklin alleges that the City discriminated against him on the basis of race by: (1) initially terminating him, (2) rehiring him and placing him on probation, (3) attempting to force him to sign a purportedly false disciplinary report, and (4)

---

[3] The court notes as a threshold matter some confusion regarding the precise legal basis for the racial discrimination claim Franklin raises against the City. The City repeatedly argues that Franklin's § 1981 claim is duplicative of his § 1983 claim and due to be dismissed on that basis. Doc. 21 at 3. This confusion is understandable given the often loose language employed by courts in this context. However, "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In other words, § 1983 provides a vehicle for a plaintiff's substantive claim, but it does not provide the legal parameters for the claim. Instead, the first step in evaluating "any such claim is to identify the specific . . . right allegedly infringed." *Id.* This underlying right, here § 1981, provides the substantive law governing the plaintiff's claim asserted against a government actor via § 1983. However, to the extent the City is simply arguing that Franklin may not assert a free-standing § 1981 claim in this case, the court agrees. The Supreme Court has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *see also Busby v. City of Orlando*, 931 F.2d 764, 771 n.6 (11th Cir. 1991) (explaining that § 1981 claims for racial discrimination against state actors effectively merges with the cause of action provided by § 1983). In any event, the court does not read Franklin's complaint as encompassing a free-standing § 1981 claim rendering the foregoing discussion academic.

permanently discharging him at the end of his probationary period. Doc. 17-1 at 8–11. Claims of racial discrimination in the employment context predicated on disparate treatment and brought via § 1983 share elements of proof with ordinary employment discrimination suits filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (explaining that the legal elements of claims of disparate treatment under Title VII and sections 1981 and 1983 "are identical") (quotation omitted). Thus, where direct evidence of discrimination is absent, as here, "a plaintiff establishes a circumstantial, prima facie case of racial discrimination . . . by showing . . . '(1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorably; and (4) [she] was qualified to do the job.'" *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997)).

Importantly, however, "[a]lthough, . . . local government may be subject to liability under § 1983, a plaintiff cannot rely upon the doctrine of respondeat superior." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015). Instead, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Thus, for a plaintiff to

prevail on such a claim, it is necessary to show that "there is a direct causal link between a municipal policy or custom and the alleged . . . deprivation." *Id.*

There are many avenues the plaintiff may pursue to establish the requisite causal connection. As is principally relevant to Franklin's claims, a municipality is liable for decisions made by its officials if the "decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). However, municipal liability may also attach based on the enactment of an official policy, the acquiescence of municipal policymakers to a "longstanding practice that constitutes the entity's standard operating procedure," or when a subordinate official's decision is later ratified by a supervisor with final policy making authority. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Critically, "proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" *Id.* at 1280 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).

The City does not quibble with the sufficiency of the pleadings with regard to Franklin's prima facie case. Instead, in light of Franklin's proposed amendments to his complaint, and the court's construction of those amendments discussed above, the sole remaining issue before the court is the City's contention that Franklin's complaint fails to plausibly establish municipal liability under §

1983 by alleging that a municipal policy or custom was the "moving force" behind the alleged discrimination Franklin experienced. *See* Doc. 9 at 2 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985)). Here, Franklin's allegations train specifically on the conduct of his supervisor, Glaze. While Franklin does not specifically allege that Glaze possessed final policymaking authority with respect to the various employment actions at issue in this case, the complaint contains enough factual material to create the inference that Glaze did, in fact, possess the requisite authority to act for the City. Among other things, the amended complaint alleges that Glaze personally offered Franklin a choice between resignation and discharge, doc. 17-1 at 5, rehired Franklin after discharging him, *id.* at 5–6, placed Franklin on probation for thirty days after rehiring him, *id.* at 6, and discharged Franklin permanently upon the conclusion of his probationary period. *Id.* at 7. Franklin neither claims that other municipal employees were involved in these events, nor suggests that the City ever reviewed Glaze's actions. Instead, the complaint directly alleges that Glaze made particular hiring and firing decisions on his own without the need for consultation or administrative review. *Id.* at 5–13; *See Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (explaining that "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review") (quotation omitted).

The court recognizes that whether a particular municipal employee is a "final policymaker" is a question of state law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), and that Alabama law vests final policymaking authority for a municipality in the mayor and the city council. *See* Ala. Code. §§ 11-43-81, 11-43-43. But, the Alabama Code, standing alone, is not dispositive at the pleading stage because the "authority to make municipal policy may be delegated." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). As explained above, the complaint is rife with allegations establishing that Glaze made a series of final employment decisions related to Franklin by discharging him twice and placing him on probation when he was rehired. *Id.* at 5–7. Therefore, because the City has not argued that Glaze acted *ultra vires*, the court finds that the allegations related to Glaze's direct actions plausibly establish that Glaze had final policymaking authority with respect to Franklin's employment status with the City. *See Pembaur*, 475 U.S. at 481, 483.[4]

---

[4] Municipal liability may also exist even if Glaze was not a final, authorized municipal policymaker. *See Praprotnik*, 485 U.S. at 127 (explaining that if an "authorized policymaker[] approve[s] a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality"); *see also Hoefling*, 811 F.3d at 1279 (explaining that "a municipality can be held liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority'") (quoting *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2004)). Indeed, the amended complaint provides a basis for the court to plausibly infer ratification of Glaze's employment decisions by a city official with the requisite authority, even without conclusively identifying such an individual. *See Hoefling*, 811 F.3d at 1281. As described above, the complaint specifically details numerous employment actions taken against Franklin by Glaze. The City does not argue that Glaze was a rogue actor or that he failed to follow appropriate procedures. Instead, the complaint indicates that these employment actions

## IV. CONCLUSION AND ORDER

To survive a motion to dismiss, it is not necessary that Franklin "prov[e] that a final policymaker acted on behalf of [the] municipality." *Hoefling*, 811 F.3d at 1280. Nor must Franklin "specifically identify the municipality's final policymaker by name." *Id.* at 1281. Instead, Franklin need only provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. He has met that burden here with respect to his disparate treatment claim based on his initial discharge, his rehire and probation, and his discharge for a second time within the space of roughly a month.

Therefore, the court finds that Franklin's amended complaint successfully alleges a § 1981 racial discrimination claim and that his request to amended his complaint is not futile. Accordingly, the court **DENIES** the City's motion to dismiss, doc. 9, except as to the Public Works Department which is **DISMISSED** as a defendant. The court **GRANTS** Franklin's motion to amend, doc. 17, and Franklin is **DIRECTED** to file his amended complaint, doc. 17-1, as a separate

---

were taken as a matter of routine. Drawing all reasonable inferences in favor of Franklin, the court concludes that even if Glaze lacked the authority to discharge or discipline Franklin, at this stage, Franklin's allegations are sufficient to establish that Glaze's decisions, and the alleged underlying animus, were ratified by an authorized policymaker and are, accordingly, chargeable to the municipal entity. *Praprotnik*, 485 U.S. at 127; *see also Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (explaining that a ratification theory does not require pattern evidence and instead the plaintiff must merely show "that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis"); *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (explaining that a showing that "the decisonmaker [acted] as a mere conduit . . . to give effect to the recommender's discriminatory animus" is sufficient to establish municipal liability).

docket entry.  Further, the court **LIFTS** the stay of deadlines in this case, and reminds the parties of their obligations under Rule 26 of the Federal Rules of Civil Procedure.

    **DONE** the 12th day of April, 2018.

                                                                     **ABDUL K. KALLON**
                                                        UNITED STATES DISTRICT JUDGE